IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

DAG Petroleum
Suppliers L.L.C. et al.,            )
                                    )
    Plaintiff,                      )
                                    )
        v.                          )        1:05cv1323 (JCC)
                                    )
BP P.L.C. et al.,                   )
                                    )
    Defendant.                      )


**M E M O R A N D U M    O P I N I O N**

      This matter was before the Court on August 28, 2006 for
oral argument on BP Products North America Incorporated's (BPPNA)
and BP p.l.c's Motions for Summary Judgment.  In what both sides
have remarked as a "simple" case, parties have submitted detailed
memoranda, supported by over sixty depositions and numerous
exhibits.  Based on a review of the pertinent pleadings and the
evidence, the Court will grant both Defendant's Motions for
Summary Judgment with respect to Counts I, II, and III.

### I. Background

      BP Products North America Inc. ("BPPNA") is indirectly
owned by its parent company BP p.l.c., located in the United
Kingdom.  In 2005, BPPNA decided to "decapitalize" its interests
in 181 gasoline stations in the Washington, D.C and Baltimore
metro areas.  DAG Petroleum Suppliers, L.L.C. ("DAG") is a
petroleum distributor which was allegedly formed for the purpose

of acquiring and operating the service stations from BPPNA.  Eyob "Joe" Mamo, an African American, is Chairman, Chief Executive Officer, and majority-owner of DAG.  DAG participated in two rounds of bidding (the "indicative" and "final" rounds) and also was allowed to make other bids.  DAG eventually was informed by BPPNA that it was not selected to acquire the stations or participate in further negotiating rounds.  BPPNA provided business reasons for selecting another bidder; DAG alleges, however, that these reasons are a pretext for race discrimination.

On June 20, 2006, Plaintiffs Mamo and DAG filed an amended complaint citing three counts.  In Count I, DAG charges Defendants with race discrimination in violation of 42 U.S.C. § 1981.  In Count II, Mamo and DAG charge Defendants with race discrimination in violation of 42 U.S.C. § 1982.  DAG recently added a claim under Virginia Code §§ 18.2-499 and 18.2-500 that Defendant's and "Eastern"(one of the winning bidders) conspired to injure DAG's business by "rigging" the bid so that Eastern would win the auction (Count III).

## II. Standard of Review

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications &
Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations
omitted).  The party seeking summary judgment has the initial
burden to show the absence of a material fact.  *Celotex Corp. v.
Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material
fact exists "if the evidence is such that a reasonable jury could
return a verdict for the non-moving party."  *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 248 (1986).

　　　　The process for litigating discrimination claims is
well established.  Since there is rarely direct evidence of
discrimination, the Supreme Court has provided the burden-
shifting *McDonnell Douglas* framework when the claim is based upon
circumstantial evidence.  *McDonnell Douglas Corp. v. Green,* 411
U.S. 792, 802-805 (1973).  Under that framework, to avert summary
judgment, the plaintiff must first establish a *prima facie* case
of discrimination.  411 U.S. at 802.  Next, once the plaintiff
has satisfied the requirements of a *prima facie* case of
discrimination, the burden shifts to the defendant to articulate
a legitimate, non-discriminatory reason for its actions.
*Williams v. Staples, Inc.* 372 F.3d 662, 667 (4th Cir. 2004).  If
the defendant shows a legitimate, non-discriminatory reason for
its actions, the burden then shifts back to the plaintiff to come
forward with sufficient evidence that a jury could reasonably
find that the defendant's asserted reasons are a pretext for

discrimination.  *Texas Dep't of Community Affairs v. Burdine*, 450

U.S. 248, 255 (1981).

### III. Analysis

        After viewing the evidence in the light most favorable

to Plaintiff, this Court concludes there is no genuine issue as

to any material fact.  Accordingly, this Court will grant

Defendants' Motions for Summary Judgment on all Counts.  The

Court will address BPPNA's motion for summary judgment as to the

race discrimination claims (Counts I and II) and then as to the

conspiracy claim (Count III).  After addressing BPPNA's motion

for summary judgment, the Court will proceed with BP p.l.c.'s

motion for summary judgment.

**A.    BPPNA's Motion for Summary Judgment as to DAG's Claims of Discrimination under § 1981 and § 1982**.

        Defendant has moved for summary judgment as to the

discrimination claims brought under 42 U.S.C. §§ 1981 and 1982.

Since Plaintiff provides no direct evidence of discrimination,

the claims of discrimination are subject to the burden-shifting

analysis under the *McDonnell Douglas* framework.

1.  Plaintiff DAG Has Proven a *Prima Facie* Case

        Both Defendant (BPPNA) and Plaintiff (DAG) agree that

the *McDonnell Douglas* framework should control.  However, since

the Fourth Circuit has not applied *McDonnell Douglas* in a public

bidding context such as this one, the parties disagree on the

elements the plaintiff must demonstrate to establish a *prima facie* case.  Plaintiff submits that this Court should follow the Eleventh Circuit's approach in *Brown v. American Honda Motor Co.,* which states that the plaintiff's burden in establishing a *prima facie* case can be met by simply demonstrating:

> (1) plaintiff is member of a minority group;
> (2) plaintiff submitted a bid which met the requirements for the available contract;
> (3) the application or bid was ultimately rejected; and
> (4) the contract was given to an individual who is not a member of a protected class.

939 F.2d 946, 949 (11th Cir. 1991).  To the contrary, BPPNA contends this Court should adopt the First Circuit's more burdensome approach taken in *T&S Serv. Assocs., Inc. v. Crenson*, 666 F.2d 722, 725 (1st Cir. 1981), which requires that the plaintiff bidder demonstrate:

> (1) plaintiff was a minority/minority owned firm;
> (2) plaintiff's bid met the specifications required of those competing for the contract;
> (3) plaintiff's bid was *significantly more advantageous* to the defendant;
> (4) defendant selected another bidder

*Id.*(emphasis added).  The differences between the two Circuits formulations is hardly immaterial, as the First Circuit's test requires the bid to be "significantly more advantageous" while the Eleventh Circuit's test only requires that the bid "meet the requirements" of the available contract.  Therefore, before this Court can proceed with the *McDonnell Douglas* framework, it must first decide which test to adopt and apply.

In the Court's opinion, the less burdensome *American
Honda* test from the Eleventh Circuit is the appropriate test to
be applied.  In *Texas Department of Community Affairs v. Burdine*,
the Supreme Court stated that the plaintiff's burden in
demonstrating a *prima facie* case is "not onerous."  450 U.S. 248,
253 (1981).  While although the First Circuit's reasoning in *T&S
Services* is somewhat persuasive,[1] the burdensome "significantly
more advantageous" requirement to establish a *prima facie* case
runs contrary to the Supreme Court's guidance in *Burdine*.  The
Eleventh Circuit's standard, requiring the bid only to "meet the
requirements of the contract," aligns more closely with this
precedent.  Furthermore, it conforms with *Dennis v. Columbia
Colleton Med. Ctr.,* in which the Fourth Circuit held that a
plaintiff in a "failure-to-promote" case is not required to
establish that she was better qualified, much less "significantly
more" qualified, than the candidate selected. 290 F.3d 639, 648-

---

[1] The First Circuit explained this "significantly more advantageous"
standard required in its forumlation:

> In the public bidding situation, the fact that a
> qualified minority firm's bid was not rejected would not
> in our view support an inference that it was more likely
> than not that the employer's decision was based on
> discriminatory criterion.  If the minority firm's bid is
> no more qualified than the accepted bid, and offers no
> price or other significant advantages to the employer,
> then the employer's decision to reject the minority bid
> would not create an inference of discrimination.

*T&S Services*, 666 F.2d at 725.

49 (4th Cir. 2002).  Therefore, this Court will proceed under the

Eleventh Circuit's *American Honda* standard.[2]

        To establish a *prima facie* case under this standard,

DAG must demonstrate that (1) DAG is a member of a minority group

(or is minority-owned); (2) DAG submitted bids that met

requirements for an available contract; (3) DAG's bids were

ultimately rejected; and (4) BPPNA awarded the contract to

entities that are not members of a protected class.  BPPNA does

not dispute the first, third, and fourth elements that DAG's CEO

was African-American, that DAG's bids were ultimately rejected,

and that Eastern and Carroll (the winning bidders) were not

members of a protected class.  Instead, BPPNA only contests the

second element by arguing that DAG's bids never "met the

requirements of the available contract" since they fell short of

the Confidential Information Memorandum's (CIM) requirements.

        The CIM, the document by which BP sought bids and

governed the bidding process, informed the bidders that they

---

[2]It is important to note that the Court reaches the same outcome in this
case independent of the test applied, since Plaintiff's case fails to show (in
the third step of *McDonnell Douglas*) that a reasonable jury could find the
legitimate business reasons given by BPPNA are pretextual.  Under the First
Circuit's test from *T&S*, this Court likely would not have reached the third
step in the analysis.  Instead, Plaintiff's case would likely have failed in
the first step, since Plaintiff cannot show the bid was "significantly more
advantageous" than the winning bid.  However, assuming *arguendo* that plaintiff
would be able to establish a *prima facie* case under this standard, plaintiff's
case would still fail to satisfy the third step of the analysis, as discussed
*supra* III.A.3 in this opinion.

should specify the volume commitment[3] being offered and that "any incremental gallons . . . should be clearly identified."  (Def.'s Mot. 18-19)(quoting the CIM).  Defendant argues that since DAG did not explicitly state the volume of petroleum it planned to purchase, the bid did not satisfy the requirements of the CIM, and therefore, DAG cannot make out a *prima facie* case. The Court finds this argument unpersuasive for two reasons.

First, the language of the CIM does not require the bidding party to specify any volume commitments.  The language simply requires that if a specific amount of incremental gallons is being offered in a bid, then that amount should be identified. In fact, according to the language of the CIM, a bidding party could provide only an offer of cash with no volume commitment whatsoever, and still "meet the requirements" of the available contract.

Second, BPPNA had accepted several bids from DAG without ever mentioning any deficiency with respect to the volume commitments.  Therefore, either BPPNA was satisfied with DAG's general statement that it would invest fifty percent of its free cash flow in incremental gallons of fuel or BPPNA simply did not require a specified amount in the bids in the first place.

---

[3]By the term "volume commitment," the CIM was referring to the amount of gallons of gasoline the bidder would commit to purchasing from BP in the future.

Thus, DAG has satisfied all the elements required to establish a *prima facie* case of discrimination in the public bidding context.  Next, the Court must proceed to the second step of the *McDonnell Douglas* framework to determine whether Defendant has provided a legitimate, non-discriminatory business reason for its actions.

### 2.  BPPNA's Reasons for its Bidding Decisions are Legitimate and Non-Discriminatory

Since Plaintiff has satisfied its burden in establishing a *prima facie* case of discrimination, the burden shifts to Defendant to articulate a legitimate, non-discriminatory business reason for its bidding decisions.  In defense of its bidding decisions and rejecting DAG's bid, BPPNA offers several reasons it claims are legitimate, non-discriminatory, and having nothing to do with the race of DAG's CEO.

First, BPPNA states that DAG did not win the bid and that BPPNA selected companies for negotiation that had higher bids with more economic and strategic value than the bid offered by DAG.  BPPNA contends that one participating bidder had a higher bid than DAG throughout the bidding process, and that it, too, did not win the contract with BP.

Second, Plaintiff's failure to commit to a specific volume of incremental gallons disadvantaged it in the bidding process.  Furthermore, the volume to which DAG would commit was

significantly less than the volumes committed by those selected for final negotiation.  BPPNA asserts that the CIM clearly stated its interest in growing the presence of the BP brand by ensuring significant volume commitments, and as such, DAG's bid was less valuable since it did not specify a volume commitment as large as other bidders.

Third, the company that BPPNA selected for the contract (Eastern) was already in a similar relationship with BPPNA as a BPPNA "jobber."  BPPNA states that "it is not at all improper for an employer or a business contemplating a long-term association to prefer doing business with someone with whom they are familiar."  *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 951 (11th Cir. 1991).  Moreover, BPPNA implies a "favoritism" of the selected companies over DAG also by citing "favoritism does not imply racial discrimination." *Price v. Fed. Express Corp.,* 127 F.Supp. 2d 801, 810 (S.D. Tex. 2001).

Fourth, DAG opposed the right of first refusal that BPPNA desired to include in the contract.  BPPNA wanted to include a right of first refusal allowing the dealers/owners of the individual gas stations to purchase them at the contract price if they so desired.  This provision, BPPNA claims, would serve to protect BP in any subsequent litigation brought by dealers and owners that were dissatisfied with the decapitalization.  It is undisputed fact that DAG was opposed to

this provision and that the winning bidders expressly offered to facilitate this right of refusal, making their bids more appealing to BPPNA, especially in comparison to DAG.

Last, BPPNA claims that even if it made a mistake and DAG's bid was better than the bids selected, a mistake on behalf of BPPNA does not imply race discrimination.  BPPNA argues that even where discrimination is alleged, "courts are not free to second-guess an employer's business judgment."  *Brown v. Brody*, 199 F.3d 446, 458-459 (D.C. Cir. 1999).  BPPNA asserts that it made a business decision based upon a variety of legitimate, non-discriminatory factors, none of which included the race of DAG's CEO, and this business decision should not be disturbed.

This Court finds that these reasons are legitimate, non-discriminatory business reasons for rejecting DAG's bid. Where a defendant "gives a legitimate, non-discriminatory reason" for its action, "it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason" for the decision.  *Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 279 (4th Cir. 2000), (quoting *Dejarnette v. Corning*, *Inc.,* 133 F.3d 293, 299 (4th Cir. 1998)).  Accordingly, this Court must now proceed to the third and final step in the *McDonnell Douglas* framework to examine the issue of whether "it truly was the reason" or whether these reasons proffered by BP are simply a pretext for race discrimination.  *Id.*

### 3.   Plaintiff DAG Has Not Shown BPPNA's Reasons are a Pretext for Race Discrimination

After a defendant has satisfied his burden of production by giving a legitimate, non-discriminatory reason for its action, the plaintiff must provide or forecast sufficient evidence from which a reasonable jury could conclude by a preponderance of the evidence that the defendant's reasons were a pretext for race discrimination.  Plaintiff DAG has failed to meet this burden for three reasons:  First, BPPNA offered the contract to a more lucrative, more advantageous offer than DAG's "Final Bid."  Second, DAG provides no evidence of BPPNA's alleged bad-faith manipulation of Eastern's bid for the purpose to prevent DAG from receiving the contract.  Third, DAG provides no evidence of racial animus or any evidence at all that BPPNA's decision was motivated by the race of DAG's CEO.

First, this Court is unable to conclude that BPPNA's legitimate and non-discriminatory reasons were a pretext for race discrimination since BPPNA offered the contract to a more lucrative, more advantageous offer.  As stated by Plaintiff DAG, on July 21, 2005, Eastern (who eventually won the contract) bid $167.8 million for all seven packages (A-G) being offered in the bidding process. (Pltf.'s Opp. 9). The auction could have ended after this bid, according to the language in the CIM that BPPNA "expressly reserved" the right to terminate the bidding at any time and seek negotiation with any party that it chooses.

Instead, over two weeks later, BPPNA accepted a "final bid" from Plaintiff DAG of $150 million for the same packages.  Therefore, it is undisputed that DAG's "final bid" was almost $18 million less than the winner's previous bid.  *Id.*  Choosing a higher, more lucrative, and more advantageous offer can hardly be considered a pretext for race discrimination.

Plaintiff suggests that this Court should compare Plaintiff DAG's bid for packages A-E on July 6, 2005 with Eastern's bid for packages A-E on June 21, 2005, or in the alternative, to compare Plaintiff DAG's oral bid subsequent to DAG's written, final bid with Eastern's final bid.  Plaintiff argues that these bids were higher than Eastern's, and therefore, BPPNA's reasons for selecting Eastern must be a pretext for nondiscrimination.  This Court disagrees.  Even if Plaintiff can prove at trial that one of DAG's "cash bids" was higher than Eastern's at some discrete point during the bidding process, this is still insufficient for a fact-finder to conclude that the bid was more advantageous and that all of BPPNA's legitimate, business reasons for selecting Eastern (cited *infra*) were a pretext for discrimination.  The "cash bid" was only one element of the offers to be considered.  BPPNA mentioned throughout the process and in the CIM that the "volume commitment" should also be included in the offers.  The volume commitments included in DAG's bids were consistently and significantly less than the

bidders that BPPNA ultimately selected.  Also, BPPNA favored a
contractual provision granting the dealers and owners the right
of first refusal; a provision that DAG opposed and other bidders
facilitated.

Second, BPPNA had reserved the right at any time to
halt the bidding process and pursue negotiations with Eastern for
any reason, even if it was simple favoritism, even if it was
unfair, so long as it was not unlawful (*e.g.* discrimination).  In
this contractual context, evidence that one of DAG's bids may
have been considered to be higher in some aspects than one of
Eastern's bids is not sufficient for a jury to leap to conclude
that BPPNA's reasons for its business decision to select Eastern
were a pretext for race discrimination since DAG's CEO was
African-American.

Next, Plaintiff DAG asserts that Defendants
"manipulated" other companies' bids in bad-faith. (Pltf.'s Opp.
9-14).  Specifically, Plaintiff claims BPPNA manipulated
Eastern's cash bid, volume commitment, and environmental
liabilities so that DAG would appear less competitive and could
subsequently be excluded.  *Id.*  However, this assertion is made
without any supporting evidence of manipulation or intent to
exclude by BPPNA.  A party opposing summary judgment may not rest
upon mere allegations.  Unsupported speculation is not enough to
withstand a motion for summary judgment.  *See Ash v. United*

*Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986).

Without more than an allegation of this intentional manipulation,

plaintiff cannot avert summary judgment.

Finally, and perhaps most important, absent in all of

DAG's arguments is any evidence of racial animus.  Sections 1981

and 1982 require proof of intentional race discrimination.  *Gen.*

*Bldg. Contractors Ass'n v. Penn.*, 458 U.S. 375, 391 (1982);

*Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617 (1987).

Plaintiff DAG provides no evidence, anywhere, that BPPNA would

have intentionally rejected a bid that it found economically,

strategically, or professionally superior by DAG in favor of a

less advantageous bid *because* of the race of DAG's CEO.  *Reeves*

*v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000).

This assertion, at the center of plaintiff's claim of race

discrimination, is wholly unsupported.

In the absence of any evidence of intentional race

discrimination, this Court will not interfere with the managerial

autonomy of BPPNA in its decision making process, especially

where BPPNA expressly reserved "the right, at any time, and in

any respect, and without giving reasons therefore, to amend or

terminate these procedures, to terminate discussions with any or

all interested parties, to reject any or all proposals, or to

negotiate with any party with respect to a transaction."  (Def.

Ex. 29)(quoting the CIM).  So long as BPPNA's "reasons" for its

decisions in the bidding process were not based on race, this
Court, nor a jury, should be able to interfere with that
decision.   In the absence of evidence that BPPNA's decision was
motivated by race, this Court finds that a reasonable jury could
not conclude that BPPNA's reasons for its bidding decisions are a
pretext for discrimination against DAG's CEO because he is
African American.

        For these reasons, this Court finds that Plaintiff is
unable to provide sufficient evidence for a reasonable jury to be
able to conclude that BPPNA's legitimate, non-discriminatory
reasons for its business decisions are a pretext for race
discrimination.   Thus, summary judgment is appropriate for
Plaintiff's discrimination claims under Counts I and II.

**B.   BPPNA's Motion for Summary Judgment as to DAG's Claim
of a "Conspiracy" between Eastern and BPPNA**

        Section 18.2-499 of the Virginia Code criminalizes two
or more persons to "combine, associate, agree, mutually undertake
or concert together for the purpose of . . . willfully and
maliciously injuring another in his reputation, trade, business
or profession[.]"   Section 18.2-500 provides civil relief for the
those that are injured by such a "business conspiracy."
Plaintiff claims that Defendant BPPNA conspired with Eastern by
entering into an agreement to willfully and maliciously injure
DAG in its reputation, trade, and business.   (Second Amended
Complaint, ¶¶ 104-05).

Viewing the evidence in the light most favorable to Plaintiff, this Court is of the opinion that there is insufficient evidence from which a reasonable trier of fact could conclude that BPPNA and Eastern entered into a conspiracy for the purpose of willfully and maliciously injuring DAG.

To prevail on its conspiracy claim, Plaintiff must prove by clear and convincing evidence that (1) Eastern and BPPNA entered into an agreement (2) this agreement was for the purpose of willfully and maliciously injuring DAG.  Plaintiff has failed to provide any evidence of either.  Instead, DAG alleges that BPPNA provided Eastern with confidential information that would be helpful through the bidding process. (Cplt. ¶¶ 60-63).[4]  It is from this allegation that Plaintiff's business conspiracy theory extends. Specifically, Plaintiff wishes this Court to infer that BPPNA's provision of helpful information to Eastern represents evidence that a sufficient jury could find that (1) BPPNA entered into an agreement with Eastern and (2) that agreement's purpose was to injure DAG during the bidding process.  Such an inference is completely unreasonable and lacks any evidentiary support. Where a plaintiff offers no evidence of an agreement or an intent to injure, summary judgment of a business conspiracy claim is

---

[4]Plaintiff alleges that BPPNA provided Eastern in advance with information describing the specific locations to be sold in the "decapitalization."  Plaintiff contends this information would be helpful because Eastern could contact those locations and inquire whether the dealers or owners would be interested in exercising their right of first refusal, resulting in Eastern having advance knowledge of less out-of-pocket expense.

proper.  *See Bay Tobacco Co., LLC v. Cont'l Distrib., LLC,* 273
F.Supp.2d 721, (E.D.Va. 2003).

At worst, the record may potentially support an
inference that BPPNA had a preference for Eastern through the
bidding process, but Plaintiff still must forecast at least some
shred of evidence of an agreement between the two parties; and
that such agreement was made with the willful and malicious
intent *to injure* DAG.  Plaintiff DAG has provided no evidence of
any such agreement between Eastern or BPPNA, nor have they
provided any evidence an intent to injure DAG, whether by actual
or legal malice.  This Court finds no evidence that Eastern nor
BPPNA had any intent other than to make a profit.  This intent,
in a capitalistic society, can hardly be considered a malicious
intent to injure any member with whom it competed.  To find
otherwise would stifle market competition that rests at the core
of capitalism.

Since Plaintiff provides no evidence of an agreement or
an intent to injure, both of which are required to establish a
business conspiracy under §§ 18.2-499 and 18.2-500, a reasonable
jury could not conclude that Eastern and BPPNA is criminally and
civilly liable under the theory of business conspiracy.
Accordingly, summary judgment is proper with respect to DAG's
claims of conspiracy.

-18-

## C.   BP p.l.c's Motion for Summary Judgment as to DAG's Claims of Discrimination and Conspiracy

DAG's claims of discrimination and conspiracy against BP p.l.c. are derived solely from BPPNA's relationship to BP p.l.c as its parent corporation.  Plaintiff never argues that BP p.l.c. should be independently liable for race discrimination or conspiracy; nor does Plaintiff argue that BP p.l.c. has committed an independent act of race discrimination or conspiracy. Instead, Plaintiff only argues that BP p.l.c. is liable by virtue of its relationship to BPPNA.  In short, Plaintiff contends only that, if BPPNA is liable, BP p.l.c. is liable as well.  Plaintiff never contends that, even if BPPNA is not liable, BP p.l.c. still should be independently liable.

Accordingly, since this Court finds no genuine dispute as to a material fact and that summary judgment is proper for all counts of race discrimination and business conspiracy against BPPNA, summary judgment is also proper for the same claims of discrimination and conspiracy against the parent company, BP p.l.c.

## IV. Conclusion

For the foregoing reasons, BPPNA's and BP p.l.c.'s motion for summary judgment shall be granted in full.  An appropriate Order will issue.


September 6, 2006                    _____/s/_____
Alexandria, Virginia                      James C. Cacheris
                                    UNITED STATES DISTRICT COURT JUDGE